**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

1. JAMES H. CLEVELAND III,
Plaintiff,

v.

1. STRATEGIC TECHNOLOGY INSTITUTE, INC.,
Defendant.

**Case No.** CIV-26-2263-R

**COMPLAINT AND DEMAND FOR JURY TRIAL**

FILED
AUG 26 2026
JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY ________, DEPUTY

I. NATURE OF THE ACTION

1. Plaintiff James H. Cleveland III ("Plaintiff"), appearing pro se, brings this action against his former employer, Strategic Technology Institute, Inc. ("STi" or "Defendant"), for disability discrimination and discriminatory discharge in violation of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101 et seq.

2. Plaintiff alleges that Defendant terminated his employment because of disability.

3. Plaintiff further alleges that the stated reasons subsequently offered by STi for his termination were not the reasons actually and honestly relied upon when the termination decision was made.

4. Plaintiff's claim is supported by, among other circumstances, disability-related comments by the STi supervisor directly involved in Plaintiff's termination; increased scrutiny after that supervisor learned of Plaintiff's disability status; the absence of prior formal discipline for the misconduct later attributed to Plaintiff; contemporaneous accounts materially different from the explanation later submitted to the Equal Employment Opportunity Commission ("EEOC"); and internal separation documentation inconsistent with STi's subsequent characterization of Plaintiff as an employee requiring immediate removal for repeated serious misconduct.

## II. PARTIES

5. Plaintiff James H. Cleveland III is an individual residing in Oklahoma and was formerly employed by Defendant.

6. Defendant Strategic Technology Institute, Inc. is a corporation that employed Plaintiff as an Electronic Support Technician and assigned him to perform work at the Federal Aviation Administration's Mike Monroney Aeronautical Center ("FAA facility") in Oklahoma City, Oklahoma.

7. At all times relevant to this action, Defendant employed fifteen or more employees and was an employer within the meaning of 42 U.S.C. § 12111(5).

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim arises under federal law, including the ADA.

9. The ADA incorporates the enforcement procedures applicable to Title VII through 42 U.S.C. § 12117(a).

10. Venue is proper in the Western District of Oklahoma because the employment practices at issue occurred in Oklahoma City, Oklahoma, Plaintiff worked for Defendant within this District, and a substantial part of the events giving rise to this action occurred within this District.

## IV. ADMINISTRATIVE EXHAUSTION AND TIMELINESS

11. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission against Defendant, Charge No. 564-2025-02974, alleging disability discrimination arising from his June 24, 2025 termination.

12. On May 31, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights advising him of his right to file suit.

13. Plaintiff received the Notice of Rights on or about May 31, 2026.

14. Plaintiff files this action within ninety days of his receipt of the EEOC Notice of Rights.

15. All administrative conditions precedent to Plaintiff's ADA claim have occurred or have been satisfied.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Qualifications

16. STi hired Plaintiff on or about April 14, 2025, as an Electronic Support Technician and assigned him to the FAA facility in Oklahoma City.

17. Plaintiff has sleep apnea, an impairment that substantially limits the major life activity of sleeping.

18. During Plaintiff's employment, STi was aware that Plaintiff had a disability and that Plaintiff was a disabled veteran.

19. Plaintiff was qualified for his position and capable of performing its essential functions.

20. Shortly after beginning employment, Plaintiff was transferred from day shift to second shift before his onboarding process had been fully completed.

21. During portions of his employment, Plaintiff lacked some of the computer access, technical-publication access, building access, toolbox access, and/or authorizations necessary to independently perform certain assigned functions.

22. Those access and onboarding limitations were not deficiencies caused by Plaintiff and affected the work Plaintiff could independently perform.

23. Despite those limitations, Plaintiff completed substantial priority training assigned at the FAA facility ahead of schedule.

24. Before the events resulting in his termination, Plaintiff had not been reprimanded, counseled, or disciplined for any workplace infraction. On one occasion, Jeff Al-Mufleh made a verbal comment to Plaintiff regarding cell phone usage during a passing conversation; Plaintiff was not formally counseled, reprimanded, or disciplined as a result of that conversation. Plaintiff alleges that his cell phone usage had not increased above the standard practice at the workplace.

25. Plaintiff likewise had not been formally disciplined for the broader pattern of repeated performance failures subsequently attributed to him by STi during the EEOC proceedings.

**B. Disability-Related Statements and Increased Scrutiny**

26. Plaintiff's regular second-shift STi supervisor was Jeff Al-Mufleh.

27. During the early weeks of Plaintiff's employment, Al-Mufleh made statements expressing disapproval of younger veterans who received one-hundred-percent disability benefits while continuing to work.

28. At least one such statement occurred before Al-Mufleh knew Plaintiff himself was a one-hundred-percent disabled veteran.

29. Al-Mufleh subsequently learned that Plaintiff was a one-hundred-percent disabled veteran.

30. After learning Plaintiff's status, Al-Mufleh subjected Plaintiff to increased scrutiny concerning his activities and work.

31. Al-Mufleh thereafter continued making comments concerning younger veterans receiving one-hundred-percent disability compensation while working.

32. On or about June 18, 2025, only days before Plaintiff's termination, Al-Mufleh again made comments expressing his negative views concerning younger veterans receiving one-hundred-percent disability benefits while employed.

33. During approximately the same period, while Plaintiff was completing priority computer-based training, Al-Mufleh frequently checked the office to determine whether Plaintiff was actively working. On one occasion, Al-Mufleh abruptly opened the office door in an apparent effort to startle Plaintiff or catch him not working. Plaintiff was actively working at the time. On other occasions, Al-Mufleh continued making frequent checks of the office while Plaintiff worked on the assigned training.

34. Plaintiff nevertheless completed the assigned priority coursework ahead of schedule.

**C. The June 24, 2025 Termination**

35. On June 24, 2025, Plaintiff reported for his scheduled shift.

36. Plaintiff was directed to Al-Mufleh and informed that his employment was ending.

37. The reason communicated to Plaintiff at that time was, in substance, that "someone" had reported that Plaintiff had been sleeping while at work or sleeping on an aircraft.

38. Plaintiff denied the allegation.

39. Plaintiff asked for the evidence supporting the accusation and sought an opportunity to respond to it.

40. Plaintiff was not shown substantiating evidence during the termination meeting.

41. Plaintiff was not informed during that meeting that he had accumulated a documented history of repeated performance failures.

42. Plaintiff was not informed during that meeting that multiple FAA personnel had repeatedly observed him sleeping.

43. Plaintiff was not informed during that meeting that the FAA had documented an inability by Plaintiff to work independently.

44. Instead, Plaintiff was presented with paperwork characterizing his separation as a voluntary resignation.

45. Plaintiff expressly refused to voluntarily resign and refused to sign the resignation form.

46. During the same termination interaction, Al-Mufleh referred to Plaintiff's status as a one-hundred-percent disabled veteran and indicated that Plaintiff would be "fine" because of that status.

47. Plaintiff also stated that the sleep-related medical condition implicated by the accusation was already part of his known disability status.

48. STi nevertheless proceeded with the termination.

**D. Contemporaneous Explanation Following the Termination**

49. On June 25, 2025, the day after Plaintiff's termination, STi Program Manager Tyler Boyd communicated to Plaintiff that the reasons provided for Plaintiff's termination were "watching sports and sleeping while on Company time," or words to that effect.

50. That contemporaneous explanation did not advise Plaintiff that he had been terminated following a documented pattern of repeated FAA-observed performance failures.

51. It did not advise Plaintiff that multiple FAA personnel had repeatedly observed Plaintiff sleeping while on duty.

52. It did not advise Plaintiff that the FAA had documented that Plaintiff was unable to work independently.

53. It did not identify a preexisting series of disciplinary actions issued to Plaintiff for those alleged deficiencies.

54. Plaintiff alleges that contemporaneous communications involving STi management reflected uncertainty regarding the factual basis for his termination and whether Plaintiff had previously been counseled concerning the conduct later attributed to him. Despite acknowledging a lack of firsthand knowledge concerning the underlying events, STi management nevertheless expressed that it would stand by the account provided by STi supervision.

**E. STi's Later EEOC Explanation**

55. After Plaintiff challenged his termination through the EEOC process, STi advanced a substantially more expansive explanation for the termination.

56. STi represented during the EEOC proceedings, in substance, that the FAA had independently identified repeated performance failures by Plaintiff.

57. STi further represented that there had been multiple observed instances of Plaintiff sleeping while on duty.

58. STi further represented that Plaintiff was unable to perform his work independently.

59. STi further represented that the FAA formally directed Plaintiff's immediate removal from the FAA facility.

60. These representations materially expanded the factual basis communicated to Plaintiff at the time of termination and immediately thereafter.

61. Plaintiff alleges that, before his termination, he had not been informed of, counseled for, or formally disciplined for the pattern of serious and repeated misconduct subsequently described by STi during the EEOC proceedings.

**F. STi's Separation Documentation**

62. STi's own separation documentation contains information inconsistent with its subsequent characterization of Plaintiff's alleged misconduct.

63. Although Plaintiff refused to voluntarily resign, Defendant's separation documentation classified or described Plaintiff's separation as a resignation.

64. STi's contemporaneous termination documentation expressly marked Plaintiff as "Recommend For Reemployment."

65. Plaintiff alleges that STi's express contemporaneous recommendation for reemployment is inconsistent with its later characterization of Plaintiff as an employee whose repeated sleeping, inability to work independently, and ongoing performance failures were so serious that the FAA required his immediate removal.

66. Plaintiff further alleges that these inconsistencies are relevant to whether STi honestly relied upon the explanation it subsequently advanced.

**G. The Role of Plaintiff's Supervisor in the Termination Process**

67. Al-Mufleh was Plaintiff's regular STi second-shift supervisor and was directly involved in the June 24 termination process.

68. Al-Mufleh had previously expressed negative views concerning younger veterans receiving one-hundred-percent disability benefits while remaining employed.

69. Al-Mufleh knew before Plaintiff's termination that Plaintiff himself was a one-hundred-percent disabled veteran.

70. After acquiring that knowledge, Al-Mufleh continued making disability-benefit-related statements and subjected Plaintiff to increased scrutiny.

71. Al-Mufleh participated directly in communicating and effectuating Plaintiff's termination.

72. Upon information and belief, Al-Mufleh supplied, transmitted, contributed to, or materially influenced information concerning Plaintiff that was considered in connection with the termination decision.

73. Contemporaneous post-termination communications reflected that material information concerning the allegations had been supplied through STi supervision and that STi management was uncertain whether Plaintiff had previously been counseled concerning conduct later attributed to him.

74. To the extent STi contends that another manager, executive, or FAA representative made or directed the ultimate decision, Plaintiff alleges in the alternative that Al-Mufleh's reports, recommendations, accusations, or other input materially influenced the process resulting in Plaintiff's termination.

75. Plaintiff expects the precise identity of all persons involved in recommending, approving, directing, or effectuating his termination, and the communications among those persons, to be established through discovery.

**H. The Purported FAA-Directed Removal**

76. Plaintiff acknowledges that STi subsequently represented that the FAA formally required his immediate removal.

77. Plaintiff disputes STi's characterization of the circumstances leading to that alleged directive.

78. Contemporaneous management communications attributed material information underlying the allegations concerning Plaintiff to STi supervision, which is inconsistent with Defendant's later characterization of the matter as arising from an independently established history of FAA-observed misconduct.

79. Plaintiff further alleges that STi's contemporaneous personnel and separation records did not characterize Plaintiff as discharged for misconduct or performance and instead expressly recommended Plaintiff for reemployment.

80. Plaintiff alleges that the circumstances surrounding any FAA removal request—including its timing, factual basis, the source of the information supporting it, and its relationship to allegations originating with STi supervision—were not disclosed to Plaintiff when his employment was terminated.

81. Plaintiff does not allege merely that STi made a mistaken employment decision.

82. Plaintiff alleges that the inconsistencies between the contemporaneous record and STi's subsequent explanations permit the inference that the stated explanation was not the reason honestly relied upon when Defendant terminated him.

**I. Realistic FAA Employment Path and Resulting Employment Harm**

83. Plaintiff's assignment placed him within the FAA's Mike Monroney Aeronautical Center, where he performed technical work in a department in which direct FAA employment was a realistic career-advancement path.

84. During Plaintiff's employment at the FAA facility, Plaintiff personally worked with at least two individuals in his same department who had previously held the same or substantially the same contractor position and job title held by Plaintiff.

85. Plaintiff has firsthand knowledge that both individuals obtained full-time employment directly with the FAA.

86. Based upon Plaintiff's firsthand observations and experience within the department, transition from the contractor position held by Plaintiff into direct FAA employment was an actual and realistic career path for individuals performing that work.

87. Plaintiff does not allege that he had been guaranteed employment with the FAA or that the FAA was obligated to hire him.

88. Plaintiff alleges, however, that his placement, experience, and continued satisfactory performance within the FAA facility provided a meaningful opportunity to compete for future direct FAA employment similar to opportunities realized by individuals who had previously occupied Plaintiff's position.

89. Upon information and belief, STi communicated information concerning Plaintiff's alleged sleeping, alleged performance deficiencies, alleged inability to work independently, and/or removal from the FAA facility to FAA personnel.

90. Plaintiff disputes the accuracy of material portions of those allegations and alleges that STi subsequently advanced materially different and more expansive descriptions of Plaintiff's alleged misconduct than the reasons communicated to Plaintiff contemporaneously with his termination.

91. Plaintiff does not presently assert an independent cause of action for defamation based solely upon those communications.

92. Plaintiff alleges, however, that communications concerning his alleged misconduct and removal were made to personnel associated with an organization that represented an established and realistic source of future employment for individuals occupying Plaintiff's contractor position.

93. Plaintiff alleges that Defendant knew or reasonably should have understood that materially false information concerning Plaintiff's professional performance, workplace conduct, or fitness to work at the FAA facility could adversely affect Plaintiff's ability to compete for future employment opportunities with the FAA or employers operating within the same professional community.

94. To the extent discovery establishes that Defendant communicated materially false information concerning Plaintiff to FAA personnel and that those communications impaired an identifiable employment opportunity or otherwise caused legally recoverable economic harm, Plaintiff seeks recovery of such damages to the extent authorized by law.

95. Plaintiff further alleges that the nature, timing, authors, recipients, and contents of communications between STi and FAA personnel concerning Plaintiff's alleged misconduct, performance, removal, and termination are substantially within Defendant's or third parties' possession and are appropriate subjects for discovery.

**J. Circumstances Supporting Discriminatory Intent and Pretext**

96. Plaintiff alleges that the circumstances described above, considered together, support a reasonable inference that disability was the but-for cause of his termination.

97. Those circumstances include disability-related supervisory comments; the supervisor's knowledge of Plaintiff's status; continued comments and increased scrutiny after that knowledge; close temporal proximity; successful completion of priority training; absence of prior formal discipline corresponding to the later allegation of repeated serious misconduct; materially expanding explanations for termination; contemporaneous management uncertainty concerning material aspects of the allegations; the resignation characterization despite Plaintiff's refusal to resign; Defendant's express recommendation of Plaintiff for reemployment; and reliance upon information supplied through STi supervision.

98. Plaintiff alleges that, absent consideration of his disability and the actions of the supervisor who had expressed disability-related animus, Plaintiff would not have been terminated when and in the manner that he was.

## VI. COUNT I - DISABILITY DISCRIMINATION AND DISCRIMINATORY DISCHARGE

99. Plaintiff incorporates paragraphs 1 through 98 as though fully set forth herein.

100. Plaintiff is an individual with a disability within the meaning of the ADA.

101. Plaintiff was qualified to perform the essential functions of his position.

102. Defendant knew of Plaintiff's disability before terminating his employment.

103. Defendant subjected Plaintiff to an adverse employment action by terminating his employment on June 24, 2025.

104. Plaintiff alleges that disability was the but-for cause of Defendant's decision to terminate him.

105. Plaintiff alleges that Defendant's stated reasons for the termination were not honestly relied upon and were a pretext for unlawful disability discrimination.

106. Alternatively, to the extent the ultimate termination decision was formally approved by an individual who did not personally possess discriminatory animus, Plaintiff alleges that the termination decision was materially influenced by information, reports, accusations, or recommendations originating from or passing through supervision affected by disability-related animus, without independent verification sufficient to break the causal chain.

107. Defendant's conduct violated 42 U.S.C. § 12112(a).

108. As a direct and proximate result of Defendant's alleged unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, periods of unemployment or underemployment, other economic losses, and compensable non-economic harm.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant and requests all relief authorized by law, including:

A. Back pay, lost employment benefits, and other proven economic losses;

B. Front pay in lieu of reinstatement, in an amount and for a period determined appropriate by the Court;

C. Compensatory damages, including proven non-economic damages, to the extent authorized by law;

D. Punitive damages to the extent permitted under 42 U.S.C. § 1981a;

E. Proven consequential employment-related economic losses to the extent recoverable under applicable law;

F. Prejudgment and post-judgment interest as permitted by law;

G. Costs and other litigation expenses recoverable by a prevailing plaintiff;

H. Appropriate declaratory or injunctive relief that does not require Plaintiff's reinstatement to employment with Defendant; and

I. Such other and further relief as the Court determines just and proper.

## VIII. JURY DEMAND

109. Plaintiff demands trial by jury on all issues triable by jury.

Respectfully submitted,

**James H. Cleveland III, Plaintiff Pro Se**
Date: 08/26/26
8613 S.W. 36th Terrace
Oklahoma City, Oklahoma 73169
Telephone: (504) 952-7128
Email: jamescleveland59@gmail.com